UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 06-120-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JUAN FRANCISCO LOPEZ, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Defendant Juan Francisco Lopez was stopped by a Kentucky State Police (KSP) Trooper near Mt. Vernon, Kentucky, after being clocked at a speed of 106 miles per hour. Lopez was arrested and placed in the back of the trooper's vehicle. Thereafter, the Defendant's automobile was searched incident to his arrest. The search revealed 73 grams of crack cocaine, scales, and a firearm. Lopez proceeded to trial after being indicted by a federal grand jury on charges of possession with intent to distribute fifty grams or more of a mixture or substance containing cocaine base, and carrying a firearm during and in relation to a drug trafficking crime. After the Court rejected the Defendant's claims of coercion and duress, Lopez was allowed to enter a conditional guilty plea during trial.

On June 19, 2007, Lopez was sentenced to a sixty-month term of imprisonment on the drug charge, and a sixty-month consecutive term of imprisonment on the gun charge. The Defendant had faced a mandatory minimum sentence of 120 months imprisonment on the drug charge and a consecutive sentence of 60 months imprisonment for his possession of a firearm.

-1-

However, for reasons relating to sealed pleadings, the Court reduced the term of imprisonment for the drug charge to 60 months.  As a result, a total sentence of 120 months of imprisonment was imposed. [Record No. 68]  Pursuant to the conditional guilty plea, counsel for Lopez filed a timely notice of appeal with the Sixth Circuit.

The written plea agreement accompanying Lopez's guilty plea outlines the specific issue reserved for appeal:

> With the exception of the Defendant's right to appeal the District Court's denial of his pretrial motions to suppress and the arguments contained therein, the Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution."

[Record No. 67]

On April 21, 2009, the United States Supreme Court determined that lower courts have misinterpreted and misapplied *New York v. Belton*, 453 U.S. 454 (1981). *See Arizona v. Gant*, 129 S.Ct. 1710 (2009).  Pursuant to this decision, the Sixth Circuit subsequently reversed Lopez's Judgment and remanded the case "for further proceedings consistent" with its opinion. Following remand, this Court heard arguments on July 21, 2009, concerning the scope of the Sixth Circuit's remand and the manner in which the case should proceed. [Record No. 87] Having been fully briefed, these issues are now ripe for resolution.

Based on the facts presented and the relevant authorities, the undersigned concludes that the Sixth Circuit issued a general remand which does not prevent the Court from addressing the United States' argument regarding admissibility of the subject drugs and weapon under the *Leon* good faith exception to the exclusionary rule.  Further, the United States has not waived this argument by failing to raise it earlier in response to the Defendant's motion to suppress.

-2-

## I.      Facts and Procedural History

### A.      The Defendant's Motion to Suppress

Following arraignment, Defendant Lopez moved the Court to suppress the evidence seized from his vehicle at the time of his arrest. [Record No. 17] Citing the concurring opinions in *Thornton v. United States*, 541 U.S. 615 (2004), Lopez asserted that KSP Trooper Cromer should not have conducted the search because the officer did not have reasonable suspicion to believe that evidence of a drug or other crime would be found in his vehicle.  In asking the Court to abandon cases interpreting *Belton* which allowed searches incident to similar arrests, Lopez argued that "Belton is outdated in that it was initially decided in the interest of police protection. However, it is not standard police procedure to handcuff and place suspects in the back of police cruisers." [Record No. 17]  The United States responded to Lopez's motion by arguing that Trooper Cromer's search of the vehicle was valid under current case law, including *New York v. Belton*, 453 U.S. 454 (1981).  It also pointed out that Justice Scalia's concurring opinion did not reflect the current state of the law on this issue.  [Record No. 19]

A motions hearing was conducted by United States Magistrate Judge Robert E. Wier on December 1, 2006.  The record reflects that, based on arguments made during this hearing, the parties were given additional time to file supplemental memoranda regarding the Defendant's suppression motion. [Record No. 20] The Defendant utilized its supplemental memorandum to assert that his arrest for speeding was unlawful. [Record No. 22]  In response, the United States argued that the Defendant's arrest was proper under Kentucky Law. [Record No. 23]

Magistrate Judge Wier issued a Recommended Disposition regarding the Defendant's motion to suppress on December 7, 2006. After considering the parties' respective arguments, Magistrate Judge Wier concluded that Lopez's arrest was lawful. Further, he recommended that the Court find that Trooper Cromer's search of the Defendant's vehicle was proper under *Belton*. More specifically, the Magistrate Judge noted that, "when a policeman has made a lawful custodial arrest of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." [Record No. 24, pp. 2-3, citing *Belton*, 101 S.Ct. 2860 at 2864] Magistrate Judge Wier further noted that this rule had been followed consistently in the Sixth Circuit. *See Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) ("[T]he right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of the search. So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest.") *See also United States v. Hudgins*, 52 F.3d 115, 120 (6th Cir. 1995) ("After placing defendant in the back of the police cruiser, the officers searched the passenger compartment of the defendant's automobile. On these facts, it is clear that *Belton* controls and that the search of defendant's automobile was proper as a search incident to arrest.") [Record No. 24]

Lopez filed two objections to the Magistrate Judge's Recommended Disposition. [Record No. 26] First, he objected to the Magistrate Judge's conclusion that his arrest was lawful under Kentucky law. Lopez continued to maintain that reckless driving must be substantiated by more than a high rate of speed. Second, Lopez asserted that Magistrate Judge Wier had failed to consider the reasonableness requirement of the Fourth Amendment's prohibition against

unlawful searches and seizures as discussed in Justice Scalia's dissenting opinion in *Thornton v. United States*, 124 S.Ct. 2127 (2004). Because the United States agreed with the Magistrate Judge's recommendation, it did not file objections to the report. Instead, it requested that the Court adopt the report and recommendation in its entirety and deny the Defendant's motions to suppress. [Record No. 27] By order dated December 27, 2006, the Court adopted the Magistrate Judge's Recommended Disposition and denied the Defendant's motions to suppress. [Record No. 28]

> B.     The Defendant's Plea Agreement

Trial commenced on January 3, 2007, with the Defendant reserving his opening statement until after the United States presented its case-in-chief. During the Defendant's opening statement, Lopez's counsel argued that his criminal activity was the result of coercion and duress. The United States promptly moved that these assertions be stricken in accordance with a motion *in limine* filed at the commencement of trial. [Record Nos. 38, 44] For reasons stated on the record, the Court sustained the government's motion. As a result, Defendant Lopez orally requested leave to enter a conditional guilty plea. [Record No. 47] The written plea agreement accompanying Lopez's plea contains the following relevant provisions:

> 3.     As to Count 1, 2, 3, and 4, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:
>
> (a) On September 27, 2006 in Rockcastle County located in the Eastern District of Kentucky, a Kentucky State Trooper, conducted a traffic stop on the Defendant. During a search of the Defendant's vehicle, incident to the Defendant's arrest, a .40 caliber pistol and 62.497 grams of a substance containing a detectible amount of cocaine base were found under the driver's seat.

(b) The Defendant possessed the cocaine base with the intention to distribute it to others. The Defendant knew that the substance was cocaine base or crack cocaine. A laboratory examination found that the substance found in the Defendant's vehicle contained cocaine base a Schedule II narcotic.

** ** **

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K. The Defendant will not seek a sentence below the applicable advisory sentencing guidelines range.[1]

8. With the exception of the Defendant's right to appeal the District Court's denial of his pretrial motions to suppress and the arguments contained therein, the Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution.

** ** **

13. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

[Record Nos . 48 and 67]

C.   *Arizona v. Gant*, 129 S.Ct. 1710 (2009)

On April 21, 2009, the United States Supreme Court significantly limited the manner in which *New York v. Belton*, 453 U.S. 454 (1981), is applied. *Arizona v. Gant*, 129 S.Ct. 1710 (2009). The petitioner in *Gant* was arrested for driving with a suspended license, handcuffed, and placed in the back of a police car. His car was then searched, revealing cocaine in a jacket pocket on the back seat. At trial, Gant's motion to suppress was denied and he was convicted of possessing cocaine for sale and for possessing drug paraphernalia. On appeal, the Arizona

---

[1]   Although the Defendant agreed not to seek a sentence below his guideline range, his attorneys filed a sentencing memorandum in connection with the sentencing hearing in which they asserted, in part, that "this Court should either apply the mandatory minimum sentence, *or perhaps deviate below the mandatory minimums"* based on seven enumerated grounds. [*See* Record No. 54; Sentencing Memorandum.]

Supreme Court reversed the conviction, concluding that the search of Gant's vehicle was unreasonable under the Fourth Amendment.  Thereafter, the United States Supreme Court granted Arizona's petition for certiorari.

Writing for a 5-4 majority, Justice Stevens affirmed the decision of the Arizona Supreme Court.  In relevant part, Justice Stevens acknowledged that *Belton* had been read as allowing the type of search conducted by the officer arresting Gant and searching his vehicle.  As Justice Stevens noted,

> our opinion [in *Belton*] has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search. . . .  As Justice O'Connor observed [in *Thornton*], "lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of Chimel."  Justice Scalia has similarly noted that, . . . allowing a search in "this precise factual scenario . . . are legion."

*Id.* at 1718.

In rejecting Arizona's argument in support of a broad reading of *Belton*, Justice Stevens concluded that such an interpretation would be incompatible with the holding in *Chimel v. California*, 395 U.S. 752 (1969).  Thus, the Court limited *Belton* to situations where the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.  *Gant*, *supra*, at 1719.  And while Justice Stevens acknowledged that the result did not follow from the holding in *Chimel*, he also concluded that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (citing *Thornton v. United States*, 541 U.S. 615, 632 (Scalia, J., concurring in judgment)).

-7-

Justice Stevens also rejected the argument advanced by dissenting justices that the earlier, more expansive reading of *Belton* should be followed under the doctrine of *stare decisis*.

> Our dissenting colleagues argue that the doctrine of *stare decisis* requires adherence to a broad reading of *Belton* even though the justifications for searching a vehicle incident to arrest are in most cases absent. The doctrine of *stare decisis* is of course "essential to the respect accorded to the judgments of the Court and to the stability of the law," but it does not compel us to follow a past decision when its rationale no longer withstands "careful analysis." *Lawrence v. Texas*, 539 U.S. 558, 577, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

(Footnote omitted.) *Id.* at 1722.[2]

The Supreme Court's *Gant* decision does not address the consequences of its holding regarding searches conducted incident to lawful arrests in reliance on *Belton* and subsequent decisions applying *Belton*. However, on July 28, 2009, the United States Court of Appeals for the Tenth Circuit addressed that precise issue in *United States v. McCane*, 2009 U.S. App. LEXIS 16557 (10th Cir., July 28, 2009).

In *McCane*, the defendant was stopped for a suspected traffic violation by an Oklahoma City police officer. After determining that McCane was driving under a suspended license, the officer placed the defendant under arrest, handcuffed him, and placed him in the back seat of the police car. The officer then conducted a search of the car which revealed a firearm in the pocket of the driver's side door. McCane was subsequently charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). McCane filed a motion to suppress the firearm as the result of an unlawful search. However, his motion was denied under *Belton*. A jury later convicted McCane on the weapon charge.

---

[2]     In dissent, Justice Breyer observed that, [a]lthough the Court['s majority] refuses to acknowledge that it is overruling *Belton* and *Thornton*, there can be no doubt that it does so. *Id.* at 1726

While McCane's appeal was pending, the Supreme Court issued its decision in *Gant*. In light of the holding in *Gant*, the parties agreed that the district court erred in denying the motion to suppress the firearm on the ground that the search was proper as incident to a lawful arrest. They disagreed, however, as to whether the district court's denial of the motion to suppress should be affirmed on an alternative ground based on the good faith exception to the exclusionary rule or the inevitable discovery doctrine.[3] In a well-reasoned opinion, the Tenth Circuit held that the good faith exception to the exclusionary rule should be applied and that the evidence produced from the search of McCane's vehicle should not be suppressed. As the court explained:

> "The exclusionary rule is not an individual right and applies only where it results in appreciable deterrence [of police misconduct]." [*Herring v. United States*, 129 S.Ct. 695, 699 (2009).] Because the purpose of the exclusionary rule is to deter police misconduct, *United States v. Leon*, 468 U.S. 897, 906 (1984), in determining whether to apply the rule the court is to weigh the benefits of the resulting deterrence against the costs of applying the rule.

*McCane*, *supra*, at *12. The court then examined several cases applying the good faith exception recognized by *Leon* and reached the following conclusion:

> Two inseparable principles have emerged from the Supreme Court's cases and each builds upon the underlying purpose of the exclusionary rule: deterrence. First, the exclusionary rule seeks to deter objectively unreasonable police conduct; i.e., conduct which an officer knows or should know violates the Fourth Amendment. . . . Second, the purpose of the exclusionary rule is to deter misconduct by law enforcement officers, not other entities, and even if it was appropriate to consider the deterrent effect of the exclusionary rule on other institutions, there would be no significant deterrent effect in excluding evidence based upon the mistakes of those uninvolved in or attenuated from law enforcement. . . . Based upon these principles, *we agree with the government that*

---

[3]     In the present case, the United States conceded at the July 21, 2009, hearing that the inevitable discovery doctrine was inapplicable.

> *it would be proper for this court to apply the good-faith exception to a search justified under the settled case law of a United States Court of Appeals, but later rendered unconstitutional by a Supreme Court decision.*
>
>  . . . a police officer who undertakes a search in reasonable reliance upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct. The refrain in *Leon* and the succession of Supreme Court good-faith cases is that the exclusionary rule should not be applied to "objectively reasonable law enforcement activity." . . . Relying upon this settled case law of a United States Court of Appeals certainly qualifies as objectively reasonable law enforcement behavior.

(Citations and footnotes omitted, italics added.) *Id.* at *18-*19.

Addressing retroactivity, the Tenth Circuit properly noted that the issue was not whether the Supreme Court's ruling in *Gant* applies, but what was the proper remedy following application of *Gant* to the facts presented.  Citing *Leon*, 468 U.S. at 897, the court concluded that retroactivity in this context "has been assessed largely in terms of the contribution retroactivity might make to the deterrence of police conduct."   And where a lack of deterrence is likely to result from excluding the evidence from searches done in good faith reliance upon settled circuit precedent, the good faith exception should apply.  *McCane, supra,* at *20 (footnote 5).

Like its sister circuits prior to *Gant*, the Sixth Circuit recognized as lawful under *Belton* searches of vehicles conducted incident to an arrest even in circumstances where the arrestee did not have access to the passenger compartment of his car.  *United States v. White*, 871 F.2d 41, 44 (6th Cir. 1989); *United States v. Martin*, 289 F.3d 392 (6th Cir. 2002) (under *New York v. Belton*, when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile); *United States v. Jones*, 2005 U.S. App. LEXIS 25303 (6th Cir., Nov. 18, 2005),

*cert. den.*, 547 U.S. 1029 (2006) (once officers determine that there is probable cause to arrest, it is reasonable for the officers to ensure their safety and to preserve evidence by searching the entire passenger compartment); *United States v. White*, 2005 U.S. App. LEXIS 3660 (6th Cir., Mar. 3, 2005) (under Supreme Court case law, when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident to the arrest, search the passenger compartment of the automobile); *United States v. Carlton*, 2002 U.S. App. LEXIS 16569 (6th Cir., Aug. 14, 2002) (When police has made a lawful custodial arrest of occupant of vehicle, he may as the contemporaneous incident of that arrest, search the passenger compartment of the automobile.  This is a bright-line rule.)

> ### D.    The Sixth Circuit's June 21, 2009, Decision

The Sixth Circuit's June 21, 2009, decision addressed the two issues raised by Lopez on appeal.  First, the court concluded that Lopez was properly arrested under Kentucky law.  As the Sixth Circuit acknowledged,

> Under Kentucky law, a police officer "may make an arrest [w]ithout a warrant when a violation of [Ky. Rev. Stat. Ann] § 189.290 . . . has been committed in his presence[.]" Ky. Rev. Stat. Ann § 431.005(1)(e).  Section 189.290(1) in turn provides that "[t]he operator of any vehicle upon a highway shall operate the vehicle in a careful manner, with regard for the safety and convenience of pedestrians and other vehicles upon the highway."  This section covers "what is commonly referred to as 'reckless driving.'" *Hutchinson v. Commonwealth*, 2003 WL 2222-333 at *1 (Ky. App. 2003).

> Lopez contends that speeding alone cannot constitute reckless driving under Kentucky law, and that his arrest was therefore unlawful.  The Kentucky Supreme Court has specifically held, however, that speeding in excess of 100 miles per hour constitutes reckless driving under § 189.290(1).  *See Huff v. Commonwealth*, 406 S.W.2d 831, 833 (Ky. 1966).  Here, it is undisputed that Lopez sped past [KSP Trooper] Cromer in excess of 100 miles per hour.  Lopez thus committed

a violation of § 189.290(1) in Cromer's presence, and Cromer was authorized to
arrest him under § 431.005(1)(e).  Lopez's first argument is therefore meritless.

[Record No. 80, pp. 2-3.]   Thus, the court concluded that Lopez was properly arrested

notwithstanding his assertions to the contrary.  The Sixth Circuit's finding on this issue explains,

in part, the reason for its remand allowing further proceedings regarding the search of Lopez's

vehicle.

The Sixth Circuit's decision also recognizes that *Arizona v. Gant*, *supra*, constitutes a

change in the law regarding searches of vehicles incident to an arrest.  Addressing Lopez's

second argument, the court made the following observation:

> In *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court held that "when
> a policeman has made a lawful custodial arrest of the occupant of an automobile,
> he may, as a contemporaneous incident of that arrest, search the passenger
> compartment of that automobile."  *Id.* at 460.  By its terms, then, *Belton* permitted
> the search here.

> But the Supreme Court has since changed the law.  In *Arizona v. Gant*, 556 U.S.
> ___, No. 07-542 (Apr. 21, 2009), the Court held that "[p]olice may search a
> vehicle incident to a recent occupant's arrest only if the arrestee is within reaching
> distance of the passenger compartment at the time of the search or it is reasonable
> to believe the vehicle contains evidence of the offense of arrest."  *Id.*, slip op. at
> 18.

[Record No. 80, p. 3]

After noting that the revised standard for a post-arrest search of Lopez's vehicle was not

met under the circumstances presented, the Sixth Circuit concluded that "[t]he search of Lopez's

vehicle, therefore, violated the Fourth Amendment as interpreted in *Gant*."  The court did not

reverse the judgment of conviction with instructions that the charges be dismissed.  Instead, it

-12-

stated that, "[t]he judgment of the district court is reversed *and remanded for further proceedings consistent with this opinion*." (Italics added.)  [Record No. 80, p. 4]

Following remand, the United States moved this Court to consider additional arguments on the Defendant's original motion to suppress. [Record No. 83] Through this motion, the government asserts that the exclusionary rule should not apply to the questioned evidence in this case because the search of Lopez's car was conducted "in good faith reliance on *Belton* and its progeny." [Record No. 83, p. 4] Citing *United States v. Leon*, 468 U.S. 897, 910 (1984), *Illinois v. Krull*, 480 U.S. 340, 352-53 (1987), and *Arizona v. Evans*, 514 U.S. 1, 10 (1995), it pointed out that the Supreme Court has limited the exclusionary rule's application to those situations in which (1) the deterrent purposes that it is designed to serve will be furthered, and (2) where the benefits of suppression outweigh its substantial social costs.  *See also*, *Herring v. United States,* 129 S.Ct. 695 (2009). [Record No. 83, p. 4]  Applying this standard, it argues that the purpose of the exclusionary rule would not be served through exclusion of the evidence found in Lopez's vehicle immediately following his arrest.  At the time, the officers conducting the search had every reason to believe that their actions were completely proper.[4]

---

[4]     The United States also cites *United States v. Peltier*, 422 U.S. 531 (1975), as support for its argument that the exclusionary rule is not served by deterring police officers from taking actions that were consistent with controlling law at the time the actions were taken.

> Unless we are to hold that parties may not reasonably rely upon any legal pronouncements emanating from sources other than this Court, we cannot regard as blameworthy those parties who conform their conduct to the prevailing statutory or constitutional norm.  If the purpose of the exclusionary rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

*Id.* at 542 (internal citations and footnote omitted). [Record No. 83, p. 5]

After the Court scheduled a hearing on the United States' motion, the Defendant responded by filing an objection to the motion and to the Court's ruling on it.  Additionally, Lopez filed a separate "Motion to Enforce Opinion of Court of Appeals."  [Record No. 86] Through this latter motion, Lopez contended that, as a result of the terms of the plea agreement, the parties were precluded from raising any arguments other than those contained in his pretrial motions to suppress. [Record No. 86, pp. 1-2]  In attempting to limit the ability of the United States to assert that the evidence found in Lopez's vehicle may be admitted as an exception to the exclusionary rule, the Defendant contends that the Court is limited to the following procedure:

> An Order consistent with the Court of Appeals' reversal order is as follows: the District Court issues an Order granting the Defendant's motion to suppress regarding the *Belton* issue; the United States elects whether or not to go forward in light of the suppressed evidence; and/or the Court either selects a new trial date or dismisses the case.

[Record No. 86, p. 2]

As a result of the Defendant's objections to the United States' motion, and due to counsel's inability to properly address the scope of the court of appeal's remand, the July 21, 2009, hearing was continued to allow further briefing by the parties.  These briefs were filed on August 10, 2009.  [Record Nos. 90 and 91]

## II.    Analysis

The Defendant argues that the United States has waived the right to re-open the issue of suppression of evidence taken from his vehicle.  He contends that, if an issue is ripe for review but was foregone, a district court is prohibited from re-opening the issue unless permitted to do

-14-

so by the mandate of the higher court. *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003); *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998). Lopez believes this rule is applicable here because he specifically requested exclusion of the subject evidence and the United States chose to make only one argument (*i.e.,* the *Belton* argument) in response. According to Lopez, the United States could have argued originally that his motion should be overruled because "even if *Belton* [was ultimately found to be] bad law, then the good faith exception should prevent the Motion to Suppress from being granted." [Record No. 90, p. 3] Lopez also contends that, as with any other argument, "the government can forfeit a waiver argument by failing to raise it in a timely fashion." [*Id.,* citing *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998), and *United States v. Canady*, 126 F.3d. 352, 359 (2d Cir. 1997).[5] In other words, Lopez contends that regardless of the state of the law, the United States should be required to assert a prophylactic *Leon* good faith argument in response to every motion to suppress that is filed.

Next, Lopez argues that even if the government did not waive the current issue from being raised in subsequent proceedings, the language of the Sixth Circuit's remand order clearly limits the issue from being raised at this stage of the proceedings. [Record No. 90, pp. 5-8] He assets that, when the Sixth Circuit sent the case back for entry of an order, "the import is that the order should now grant the motion to suppress, and thus exclude the evidence, from trial." [Record No. 90, p. 6] Finally, Lopez contends that the United States cannot now rely on the

---

[5]     As a related argument, Lopez argues that the government's attempt to raise the good faith exception to the exclusionary rule is barred by the law of the case doctrine. *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997).

good faith exception to the exclusionary rule because to do so would violate the retroactivity rule. [Record No. 90, pp. 8-9]

The United States strongly disagrees with the position taken by Lopez. While it agrees that, following remand, a district court must implement both the letter and the spirit of the appellate court's mandate, it posits that the mandate in this case compels further proceedings to address the admissibility of the drugs and weapon found in Lopez car incident to his arrest. It also cites several cases which indicate that the Sixth Circuit's order in this case was general – as opposed to a limited – remand. *See United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003); *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997); *United States v. Robinson*, 503 F.3d 522, 526 (6th Cir. 2007); *United States v. Cassidy*, 720 F.2d 451, 459 (6th Cir. 1983). Based on this abundant authority, the government argues that the Sixth Circuit's remand "for further proceedings consistent with this opinion" is a general remand which contains no limiting language. Further, when read in the context of the opinion, it does not limit the remand by prohibiting the Court from considering the good faith exception following the Supreme Court's decision in *Gant*. Instead, the United States asserts that this Court should follow those courts which have applied the good faith exception to searches which were valid before *Gant* was decided. *See United States v. McCane*, ___F.3d ___, 2009 WL 2231658, at *6 (10th Cir., July 28, 2009); and *United States v. Allison*, ___F.Supp.2d___, 2009 WL 2218693 (at *12 (S.D. Iowa, July 24, 2009).

-16-

A.   <u>Waiver</u>

Lopez cites *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998), in support of the argument that the United States has waived its right to argue that the *Leon* good faith exception applies here.  However, the Sixth Circuit's decision in *Hunter* is inapplicable to the facts of this case. In *Hunter*, the defendant entered a guilty plea to one count of conspiring to possess crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  The plea agreement which Hunter signed provided for a specific drug quantity attributed to him.  The document further contained a recommendation that the parties believed that a sentence of 87 months was appropriate.  Additionally, Hunter expressly waived his right to appeal his sentence for any reason.  After the defendant's sentencing guidelines were calculated, his range of imprisonment was determined to by 87 to 108 months.  At sentencing, Hunter challenged the quantity of drugs attributed to him.  However, the court ultimately sentenced him to the bottom of his guideline range (87 months) which was in accord with the parties' recommendation outlined in the Plea Agreement.

While Hunter did not file a direct appeal, he later filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, claiming several errors by his attorney including failure to appeal his sentence and failure to object to the drug quantity attributed to him in his presentence investigation report. The district court denied Hunter's habeas petition, concluding that the defendant's trial counsel had not been ineffective for failing to file a notice of appeal, given that Hunter had expressly waived that right in his plea agreement.  Additionally, the court rejected Hunter's argument of ineffective assistance for failure to object to the amount of drugs attributed

-17-

to the defendant.  However, because that court had failed to make an explicit factual finding regarding the drug amount, it ordered Hunter to be returned for resentencing.  At the subsequent hearing, the court concluded that it "is reasonably foreseeable that Hunter is accountable for 35 grams of cocaine base as his part of the conspiracy. . . .  Accordingly, Hunter's 87 month term of imprisonment shall remain in effect."  *Id.* at 1113.

Hunter appealed the denial of his habeas petition to the Sixth Circuit.  In response to the government's assertion that he had waived his right to appeal his sentence, Hunter contended that the argument had been waived because it had not been presented to the district court during the § 2255 proceeding.  The Sixth Circuit agreed with this contention but decided the appeal on other grounds.

Unlike the waiver provision presented in *Hunter*, *id.*, paragraph 8 of Lopez's Plea Agreement does not prevent the government from asserting an exception to the exclusionary rule now that it has been determined that the search of the Defendant's vehicle was not proper under *Belton*.  Again, Lopez's waiver provision provides:

> 8.  With the exception of the Defendant's right to appeal the District Court's denial of his pretrial motions to suppress and the arguments contained therein, *the Defendant waives* the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution.

(Italics added.) [Record Nos. 48 and 67] The United States cannot be said to have explicitly waived any rights under this provision.  Further, contrary to the position taken by Lopez, this issue was not ripe for review at the time the Defendant filed his motion to suppress.  At that time, *Belton* mandated the Court's holding that the crack cocaine and weapon found in Lopez's vehicle

-18-

incident to his lawful arrest did not violate the exclusionary rule. Thus, the government did not

fail to raise application of the *Leon* good faith exception in a timely fashion.  In short, a change

in the law occurring during the pendency of Lopez's appeal has resulted in a ruling that causes

the government to raise – and the Court to examine – this issue for the first time in the context

of the facts presented.  In short, the issue was neither waived explicitly (*via* the written Plea

Agreement) or implicitly (*via* conduct).

> B.      The Scope of the Sixth Circuit's Remand Order

The difference between a limited mandate and a general mandate is the presence of

limiting language.  *United States v. O'Dell*, 320 F.3d 674 (6th Cir. 2003) (citing *United States*

*v. Moore*, 131 F.3d 595, 589 (6th Cir. 1997)).  To impose a limited remand, "an appellate court

must "sufficiently outline the procedure the district court is to follow.  The chain of intended

events should be articulated with particularity."  As the Court in *United States v. Smith*, 2001

U.S. App. LEXIS 21657 (6th Cir., Oct. 4, 2001), further explained, appellate courts should leave

no doubt in the district judge's or parties' minds as to the scope of the remand.  "The language

used to limit the remand should be, in effect, unmistakable."  *Id.*, (citing *United States v.*

*Campbell*, 168 F.3d 262, 268 (6th Cir. 1999)).

Conversely, in *O'Dell* and *Moore*, the Sixth Circuit provided three examples of general

mandates.

> In *United States v. Young,* 34 F.3d 500, 505 (7th Cir. 1994), the court considered
> the court considered the scope of this mandate: "we therefore vacate the district
> court's sentence and remand the case for resentencing consistent with this
> opinion."  Next, in *United States v. Caterino*, 957 F.2d 681, 684 (9th Cir. 1992),
> the Ninth Circuit analyzed this mandate: "the district court erred by adding
> multiple victim adjustments to Appellant['s] offense level under the Guidelines.

-19-

We therefore VACATE . . . [Defendant's] sentence [] and REMAND for resentencing." Finally, in *United States v. Cornelius*, 969 F.2d 703, 705 (8th Cir. 1992), the Eighth Circuit considered this order: we reverse the district court's determination that Cornelius was not an armed career criminal under §§ 924(e) and remand for resentencing." As we explained, "each of these three mandates was a general mandate because each one of these cases involved a remand order that simply vacated or reversed the sentence imposed by the district court and remanded for re-sentencing." *Moore*, 131 F.3d at 599.

*O'Dell*, 320 F.3d. at 680.[6]

Here, the Sixth Circuit issued a general mandate with specific instructions regarding the scope and application of *New York v. Belton*, 453 U.S. 454 (1981). As previously referenced, the court directed that "[t]he judgment of the district court is reversed *and remanded for further proceedings consistent with this opinion*." (Italics added.) [Record No. 80, p. 4] The opinion did not direct this Court to dismiss the action as the Defendant's counsel asserts. Likewise, it did not indicate or otherwise instruct that this Court could not address whether the *Leon* good faith exception to the exclusionary rule should be applied. Instead, it simply limited application of the Supreme Court's holding in *New York v. Belton*, 453 U.S. 454 (1981), in light of *Arizona v. Gant*,129 S.Ct. 1710 (2009).

C.    Retroactivity

The undersigned agrees with the Tenth Circuit's analysis on the issue of retroactivity. *United States v. McCane*, 2009 U.S. App. LEXIS 16557 (10th Cir., July 28, 2009). As outlined above, the issue is not whether the Supreme Court's ruling in *Gant* applies, but what was the

---

[6]    In the context of a general remand for resentencing, and absent explicit limitations in the appellate court's mandate, an order vacating a sentence and remanding the case for resentencing directs the sentencing court to begin anew, so that fully *de novo* resentencing is appropriate. The only constraint under which the district court must operate is the remand order itself. *United States v. Jennings*, 83 F.3d 145 ,151 (6th Cir. 1996); *United States v. Moored*, 38 F.3d 1419, 1422 (6th Cir. 1994).

proper remedy following application of *Gant* to the facts presented.  Retroactivity in this context "has been assessed largely in terms of the contribution retroactivity might make to the deterrence of police conduct."  *Leon*, 468 U.S. at 897.  Where a lack of deterrence is likely to result from excluding the evidence from searches done in good faith reliance upon settled circuit precedent, the good faith exception may be asserted.  *McCane, supra,* at *20 (footnote 5).

### III.   Conclusion

On June 1, 2009, the Sixth Circuit reversed Lopez's Judgment and remanded the case for further proceedings consistent with its opinion.  That opinion did not restrict this Court from considering whether the good faith exception to the exclusionary rule applies to the facts presented.  Further, the United States has not waived the right to assert that the good faith exception applies.  Accordingly, it is hereby

**ORDERED** that Defendant Juan Francisco Lopez's Motion to Enforce Opinion of Court of Appeals [Record No. 86] is **DENIED**.  Likewise, the Defendant's objections to the United States' motion for a suppression hearing [Record No. 85] are **OVERRULED**.

A hearing on the United States' motion [Record No. 83] will be rescheduled for **Monday, September 14, 2009**, beginning at the hour of **10:00 a.m.**, at the United States Courthouse in London, Kentucky.

This 1st day of September, 2009.



Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**